UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MATTRESS BY APPOINTMENT LLC, a
Florida limited liability company,

                                                    CASE NO:

        Plaintiff,

vs.

DANIEL ADAMS, an individual,

        Defendant.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT
AND DEMAND FOR JURY TRIAL**

Plaintiff, Mattress by Appointment LLC ("MBA"), a Florida limited liability

company, sues Defendant Daniel Adams ("Adams"), and alleges as follows:

**PARTIES**

1.      Plaintiff, Mattress by Appointment LLC, is a Florida limited liability

company with its principal place of business located in Greenville, South Carolina.

2.      Defendant Daniel Adams is a Florida resident.

**JURISDICTION AND VENUE**

3.      The Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 (federal question jurisdiction under the Copyright Act of 1976, 17 U.S.C.

§ 101, *et seq.*; Article I, § 8, cl. 8 of the U.S. Constitution); 28 U.S.C. § 1338 (exclusive

original jurisdiction over claims arising under the Copyright Act of 1976); 18 U.S.C.

§ 1836(c) (the Federal Defend Trade Secrets Act of 2016), and 28 U.S.C. §§ 2201 & 2202

(the Federal Declaratory Judgment Act), because MBA seeks a declaratory judgment that

Defendant's purported copyright under registration number TXu 2-156-964 (the "Registration") is invalid and unenforceable, and not infringed by MBA. This Court also has jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction) and the doctrines of pendant and ancillary jurisdiction.

4.      An actual and justiciable case and controversy has arisen and now exists relating to the party's respective rights, duties and obligations in view of Defendant's asserted copyright registration. As set forth below, Defendant took MBA's pre-existing works of authorship, filed for and registered a copyright in them by falsely representing that the work he submitted to the United States Copyright Office was his own, and then threatened MBA with an infringement lawsuit if it did not stop using the falsely registered work. Defendant also demanded that MBA cease using MBA's proprietary, confidential, and trade secret training materials that MBA had paid Defendant over $700,000 to provide MBA with suggested updates for MBA to edit and decide whether to add to the proprietary MBA training materials for use in connection with MBA's business.

5.      This Court has personal jurisdiction over Defendant Adams and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(a), because the Defendant resides in this District and transacts business in this District.

## FACTUAL BACKGROUND

**MBA's Business and Dealers**

6.      MBA sells and markets mattresses throughout the United States through a network of independent dealers who solicit and schedule one-on-one appointments with customers and potential customers.

7.      MBA recruits individuals to serve as independent dealers.  MBA appoints those individuals as exclusive dealers to promote and sell mattresses and related products within a fifteen-mile radius of the dealer's approved physical sales location.

8.      MBA provides distinct and specialized training to its dealers on how to succeed in selling mattress through one-on-one appointments with customers and potential customers.  As part of that training, MBA provides its dealers proprietary training materials.  These proprietary training materials include information, forms, and other materials used by MBA's dealers to, among other things, operate their dealerships, advertise, price, promote, and market their products and services, take and fulfill orders, and generate and track sales and revenues.

9.      MBA created the training materials through significant time, expense, and labor.  The materials contain original expression of MBA and are regularly updated and maintained to keep them current with new strategies, training, and operational information.

**Adams Joins MBA**

10.     On or about December 7, 2013, Defendant became an MBA dealer and executed agreements providing him with an exclusive territory to engage in dealership activities on behalf of MBA.  Defendant executed territory agreements with MBA on December 7, 2013 and January 2, 2016 (together, the "Territory Agreements").  The Territory Agreements are attached hereto as **Composite Exhibit A**.

11.     In the Territory Agreements, Defendant agreed and acknowledged that:

[B]y virtue of this Agreement, [Defendant] will receive access to MBA's intellectual property, including but not limited to its proprietary business methodology and specialized training also known as the "Owner's Manual" ("Manual"), which [Defendant] agrees is maintained as a secret by MBA using reasonable precautions to keep it confidential and, if disclosed, would be of economic value to MBA's competitors if known by them[.]

12.     In the Territory Agreements, Defendant agreed, among other things, that he would not disclose any of MBA's trade secrets or confidential information, and that he would return all intellectual property of MBA to MBA upon termination of the Territory Agreements.  These restrictions survive termination of the Territory Agreements.  *See* Territory Agreements, Composite Exhibit A hereto.

13.     In addition, Defendant executed confidentiality agreements with MBA on December 5, 2013, January 25, 2017, February 22, 2017, February 23, 2017, and June 19, 2019 (together, the "Confidentiality Agreements"), each of which required Defendant to not use or disclose MBA's confidential information for any purpose except MBA's business.  The Confidentiality Agreements are attached hereto as **Composite Exhibit B**.

14.     The Confidentiality Agreements define "Confidential Information" as, among other things, "any specialized training received by [Defendant] regarding MBA's proprietary sales methodology, including but not limited to the information in the sales 'Playbook.'"

15.     Defendant served as an MBA dealer for nearly six years.  Over the course of his relationship with MBA, the Territory Agreements and Confidentiality Agreements governed Defendant's MBA dealership and other issues, including the obligations of confidentiality and non-competition.

- 4 -

16.     In connection with the operation of his dealership, MBA provided Defendant with training, including access to and use of the proprietary training materials described above ("MBA Materials").

17.     During his time with MBA, Defendant demonstrated his competence and eagerness to do more to help MBA grow and expand its business and network of independent dealers.

18.     MBA placed significant trust in Defendant and involved him in the operation of MBA's business.

19.     In late 2014, MBA's management developed a training program that Defendant would present to new and existing dealers.

20.     In 2014, MBA paid Defendant over $21,000 for providing those services.  Over time, Defendant grew into a training position for MBA and was entrusted with greater responsibilities.

21.     In late 2014 and into 2015, Defendant served as MBA's national sales leader and mentor.  In that role, Defendant served as a liaison between MBA and its new dealers and helped those dealers understand MBA's business model and trained them on MBA's business strategies.

22.     By early 2015, Defendant was handling MBA's new dealer training. In that role, Defendant was responsible for the MBA Materials, which included a "New Dealer Training Packet" that contained, among other content, the following: (a) How to Use Craigslist; (b) How to Use Facebook; (c) Negotiating; (d) Phone

Approach; (e) Activity Reports; (f) MBA Invoice; (g) Profit Sheet; (h) Sample Flyers; (i) 20/20 Daily Action Plan, and (j) Clearance Center Price Sheet.

23.    MBA developed the MBA Materials solely for use in connection with MBA's and its dealers' business and they are used by MBA's employees, officers, directors, principals, agents, contractors, licensees, and dealers (the "MBA Parties") under agreement with MBA.  The MBA Parties are all subject to confidentiality agreements and/or restrictive covenants which require them to keep the MBA Materials confidential.

24.    The MBA Materials were created, developed, and improved upon prior to the time that Defendant first met MBA and its representatives, and prior to the time MBA first provided Defendant with access to them.

25.    From 2014 through 2019, MBA paid Defendant over $700,000 for the training and mentoring services he provided for MBA's new and existing dealers.  This compensation was in addition to the substantial profits Defendant earned during the same time period from the operation of his MBA dealership.

26.    Throughout his time with MBA, Defendant worked directly with MBA's most senior leaders, including its owner and chief executive officer.  Acting under the direction, supervision, and control of MBA's management team, Defendant made certain suggested edits and revisions to the MBA Materials. Before any edits were added to the MBA Materials, they were reviewed, edited, and ultimately subject to approval by MBA's management team.

**Defendant's Unlawful Actions and the State Court Action**

27.    On or about December 10, 2018, while Defendant was serving as an exclusive MBA dealer and providing the training services to MBA's dealers as described above, Defendant surreptitiously set up a competing business that he later operated as Discount Direct Inc., a Florida corporation (the "Competing Business").

28.    MBA did not learn about Defendant's Competing Business until August 2019.

29.    In connection with the formation and establishment of his Competing Business, Defendant stole and misappropriated MBA's confidential and trade secret information.  Defendant also took a copy of the confidential MBA Materials for use in connection with his Competing Business.

30.    Defendant's Competing Business competed with MBA throughout the United States and specifically within the exclusive territories provided to him by MBA under his agreement with MBA.

31.    Defendant's establishment and operation of the Competing Business breached the Territory Agreements and Confidentiality Agreements he had entered into with MBA.

32.    Upon learning of Defendant's conduct and investigating the same, on August 15, 2019, MBA immediately terminated for cause the dealership agreement it had entered into with Defendant.

33.    On the same day, MBA filed a lawsuit in Florida state court against Defendant and a number of companies he had formed to run his Competing Business

and another individual that conspired with him in connection with those activities (the "State Court Action").  The State Court Action is styled as, *Mattress by Appointment LLC v. Daniel Adams, et al.*, case number 16-2019-CA-005809-XXXX-MA, Division CV, in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida.  In the State Court Action, MBA asserted nine counts for breaches of confidentiality and territory agreements, misappropriation of trade secrets under Florida's Uniform Trade Secrets Act (Fla. Stat. 688.001 *et seq*.), tortious interference with contractual relationships, and civil conspiracy.

34.    On October 3, 2019, after an evidentiary hearing and full briefing by all parties, the court in the State Court Action entered an order granting MBA's motion for entry of a preliminary injunction (the "Injunction") against Defendant and the other defendants finding the non-competition and confidentiality obligations and restrictions contained in the Territory Agreements and Confidentiality Agreements were valid and enforceable.  Among other things, the Injunction required Defendant to give up possession of all MBA Materials.  The State Court Action remains pending.

**Defendant's Fraudulent Copyright Registration of the MBA Materials**

35.    Prior to entering the Injunction, the court in the State Court Action conducted an evidentiary hearing on August 23, 2019, on MBA's motion seeking the preliminary injunction.

36.    Defendant or his counsel brought a notebook containing many of the MBA Materials to the evidentiary hearing.

37.    MBA objected to Defendant's possession of any of MBA's confidential information (including the MBA Materials) that were contained in the notebook. Pursuant to the Territory Agreements, Defendant was required to return and cease using all of MBA's information and materials immediately upon termination.

38.    In response to the court's inquiry about who should have possession of the materials pending that court's ruling, Defendant's counsel represented that he, the lawyer, would continue to maintain sole possession of the notebook containing MBA's confidential information (including portions of the MBA Materials) to the exclusion of his client.

39.    That representation turned out to be misleading at best (and perhaps fraudulent) because unbeknownst to MBA or the court, Defendant possessed another copy or copies of the MBA Materials, and three days after the hearing, on August 26, 2019, Defendant filed an application with the United States Copyright Office seeking to register a copyright in the MBA Materials.

**Defendant Files Fraudulent Copyright Application**

40.    On August 26, 2019, Defendant filed the application with the Copyright Office electronically (the "Copyright Application") along with an electronic copy of the MBA Materials (the "Deposited Materials").

41.    In submitting the Copyright Application, Defendant knowingly made the following inaccurate and fraudulent representations to the Copyright Office:

(a) The work ("Mattress By Appointment Business Plan") was authored solely by Defendant; and

(b) Defendant completed creation of this work in 2014.

42.    A copyright application requires an applicant to define and "limit" his or her claim in the subject work by specifically excluding any preexisting material not created or owned by the applicant.  *See* 17 U.S. C. § 409(9).  Defendant left this portion of the Copyright Application blank thus failing to disclose that the work included preexisting materials belonging to MBA and falsely suggesting that the "Mattress By Appointment Business Plan" was authored and owned entirely by Defendant.

43.    Defendant's failure to disclose this information also constituted a representation to the Copyright Office.

44.    As a condition of submitting and filing a copyright application, an applicant must certify that the information provided in the application is correct to the best of his or her knowledge (the "Certification").  The Certification requirement is set forth in the Copyright Office's regulations at 37 C.F.R. § 202.3(c)(2)(iii).  Knowingly making a false representation of a material fact in an application for copyright registration, or in any written statement filed in connection with the application, is a criminal offense and punishable under 17 U.S.C. § 506(e).

45.    When filing a copyright application electronically, the Copyright Office's online form requires an applicant to electronically sign the Certification.  It appears as follows:

The Application must be certified by the author, copyright claimant, or owner of exclusive right(s), or by the authorized agent of any of the preceding.

**17 USC 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided by section 409, or in any written statement filed with the application, shall be fined not more than $2500.**

[ ] *I **certify** that I am the author, copyright claimant, or owner of exclusive rights, or the authorized agent of the author, copyright claimant, or owner of exclusive rights of this work and that the information given in this application is correct to the best of my knowledge.

\* Name of certifying individual: [_____]

Applicant's Internal Tracking Number (Optional): [_____]

46.    Defendant electronically signed and made this Certification in connection with the online filing and submission of the Copyright Application.

47.    The statements made by Defendant in the Copyright Application were false and inaccurate.  Defendant misrepresented that he was the sole author of the "Mattress By Appointment Business Plan," even though this was not true.  Defendant did not author it.  The creation of the MBA Materials pre-dated his relationship with MBA in 2013.  The MBA Materials (or prior versions thereof) were provided to him as part of his dealer training.  They existed prior to 2014 – the year that Defendant claims he created them.

48.    As explained above, the MBA Materials were created and in existence well before 2014, and prior to Defendant first entering into a dealership relationship with MBA in 2013.

49.    By failing to limit or disclaim the pre-existing materials he knew to be owned by MBA, Defendant knew the resulting copyright registration would contain false and fraudulent information.

50.    The following examples demonstrate that the Deposited Materials Defendant submitted to the Copyright Office as part of his Copyright Application contained and were MBA's preexisting materials that he did not author:

51.    The first page of the Deposited Materials contain the following title page:



52.    Many pages of the Deposited Materials contain MBA's business logos:

 

53.    The Deposited Materials contain a sample of MBA's business cards used by MBA's dealers:



54.    The Deposited Materials include a cover image and graphic used by MBA and its dealers:



Your Cover Image



55.     Defendant knew about his misrepresentations at the time he completed the online form, electronically signed the Certification, and filed the Copyright Application.

56.     Defendant's misrepresentations to the Copyright Office were material.

57.     The Copyright Office relied upon Defendant's statements in approving the Copyright Application and issuing the Registration.   Based on controlling copyright law and the Copyright Office's policies and practices, if the Copyright Office had known of Defendant's false statements, it would have refused registration of Defendant's Copyright Application.

58.     Instead, however, the Copyright Office relied upon the statements and Defendant's Certification, accepted that information was true, correct, and complete, and granted Defendant the Registration.

59.     Defendant did not disclose to MBA that he had filed the Copyright Application until after the state court entered the Injunction – some six (6) weeks after Defendant filed the Copyright Application.   Instead, after fraudulently obtaining the

Registration and after issuance of the Injunction against him, Defendant threatened MBA with a copyright infringement lawsuit if MBA did not immediately cease all use of the MBA Materials – materials which were created and owned by MBA and materials that Defendant expressly agreed not to use or disclose in six separate written agreements.

60.     There is a substantial risk that Defendant will continue to threaten and sue MBA for MBA's use of the MBA Materials.

61.     Defendant's obtaining the Registration through fraud and threatening MBA with copyright infringement litigation has caused MBA irreparable injury and MBA will continue to suffer irreparable injury unless the rights of MBA to use and continue using the MBA Materials are confirmed, and until the non-infringement, invalidity and unenforceability of that copyright are determined.

62.     MBA does not have an adequate remedy at law.   Defendant is threatening MBA and there is a cloud over MBA's use and continued use of the MBA Materials.

63.     Entry of an injunction will serve the public interest because federal courts and the public have a strong interest in protecting businesses, like MBA's business and the hundreds of MBA dealers across the country, from the threats of enforcement of invalid, unenforceable, and non-infringed copyrights and works.

64.     The balancing of the interests of the parties in granting the relief requested herein decidedly favors MBA.   Defendant has no legitimate interest in fraudulently registering and enforcing a copyright in a work he did not create or own.

Nor would Defendant's purported copyright, if he created any of the materials, override his contractual obligations to not use or disclose MBA's confidential and trade secret materials.  Moreover, under the plain and unambiguous language of those agreements, Defendant should not even have had possession of the MBA Materials at the time he filed the Copyright Application.

65.    MBA has retained the undersigned lawyers to prosecute this matter and is obligated to pay them attorneys' fees.

66.    All conditions precedent to the maintenance of this action have been met, satisfied, or waived.

## COUNT I
### Declaration that Copyright Registration Number TXu 2-156-964 is Invalid and/or Unenforceable

67.    MBA incorporates herein by reference the allegations contained in paragraphs 1 through 66.

68.    As set forth above, Defendant included false and inaccurate information in his Copyright Application with the knowledge that it was inaccurate and that the Copyright Office would rely on the false information in issuing the Registration.

69.    The inaccurate information included in the Copyright Application by Defendant was material, and if known by the Copyright Office, would have caused the Register of Copyrights to refuse registration.

70.    The Registration is therefore subject to invalidation by the Court for failing to satisfy the requirements of 17 U.S.C. § 411(b).

71. Because it is invalid and unenforceable, the Registration cannot support an infringement claim, which requires a valid registration pursuant to 17 U.S.C. § 411.

72. Notwithstanding that the Registration was fraudulently obtained and is invalid, Defendant has used it to assert claims of infringement against MBA in an effort to prohibit MBA from using its own confidential and trade secret training materials.

73. Accordingly, an actual justiciable controversy exists as to the parties' respective rights in connection with the MBA Materials and the Registration.

74. A determination that the Registration is invalid and/or unenforceable would resolve this controversy.

**COUNT II**
**Declaratory Relief that Copyright Registration Number TXu 2-156-964 is Not Infringed by MBA**

75. MBA incorporates herein by reference the allegations contained in paragraphs 1 through 66.

76. As set forth above, MBA created and compiled the MBA Materials prior to the time that it first entered into any relationship with Defendant. Defendant became an MBA dealer in 2013. At that time, MBA provided Defendant with access to the MBA Materials to train him in connection with the operation of his MBA dealership.

77. From 2014 through 2019, MBA paid Defendant over $700,000 to maintain and update the MBA Materials by providing suggested updates under the supervision

of MBA's management team with the understanding that the updated MBA Materials would remain solely for use by MBA and its dealers.

78.     Defendant made edits to the MBA Materials at the specific request and direction of MBA and Defendant was compensated for performing that role.

79.     Defendant delivered all proposed edits to MBA's management level employees for their review, approval, and further editing.  The ultimate decision as to whether such edits would be added to the MBA Materials (or the MBA Business Manual) was made by MBA.

80.     Defendant knew the MBA Materials were owned, licensed, and used exclusively by MBA in connection with its business and its dealers and also knew that MBA made that determination in its sole and absolute discretion.  Defendant knew that any edits would become a part of the MBA Materials after editing, review, and approval by MBA's management employees.  Defendant knew the resulting MBA Materials would be fully and completely used by MBA in the same manner as those materials were owned and licensed prior to Defendant's involvement.

81.     MBA paid Defendant over $700,000 for his services.

82.     After Defendant provided MBA with edits, and after learning that a number of them were incorporated into the MBA Materials, Defendant knew MBA was making full use of those MBA Materials.

83.     Defendant never objected to MBA's use of the MBA Materials until after MBA filed the State Court Action.

84.     The foregoing actions, conduct, approvals, and compensation constitute an express, oral, and/or implied license to MBA for the full use of the MBA Materials containing any of the edits made or suggested by Defendant.

85.     The foregoing actions, conduct, approvals, and compensation also prohibit Defendant from asserting any claims of copyright infringement against the MBA Parties or demanding they cease using the MBA Materials because Defendant has unclean hands, is estopped from doing so, abandoned his rights and copyrights, or waived and/or acquiesced to MBA's use of the MBA Materials.

86.     In view of the foregoing, Defendant has no legal rights in copyright to prevent the MBA Parties from exercising any rights or use of the MBA Materials.

87.     MBA does not and cannot infringe any purported exclusive rights held or owned by Defendant in the MBA Materials, including the Deposited Materials.

88.     Notwithstanding the threatened infringement action, Defendant cannot prohibit the MBA Parties from making any uses of the MBA Materials.

89.     Accordingly, an actual justiciable controversy exists as to the parties' respective rights in connection with the MBA Materials.

90.     A determination that any claim of copyright infringement by Defendant against any of the MBA Parties based on use of the MBA Materials is barred or unenforceable, in whole or in part, or that the MBA Parties are not infringing, would resolve this controversy.

## COUNT III
## Breach of the Confidentiality Agreements

91.    MBA hereby incorporates herein by reference the allegations contained in paragraphs 1 through 66

92.    Defendant entered into the Confidentiality Agreements with MBA.

93.    Defendant breached the Confidentiality Agreements with MBA by retaining copies of MBA's intellectual property after termination of the Confidentiality Agreements.

94.    Defendant further breached the Confidentiality Agreements with MBA by submitting the MBA Materials to the Copyright Office.

95.    MBA has suffered, and continues to suffer, damages as a result of Defendant's breach of the Confidentiality Agreements.

96.    Defendant agreed to pay MBA its reasonable costs and attorneys' fees incurred in enforcing the Confidentiality Agreements and Territory Agreements.

## COUNT IV
## Breach of Territory Agreements

97.    MBA hereby incorporates herein by reference the allegations contained in paragraphs 1 through 66

98.    Defendant entered into the Territory Agreements with MBA.

99.    Defendant breached the Territory Agreements with MBA by retaining copies of MBA's intellectual property after termination of the Confidentiality Agreements and Territory Agreements.

100.    Defendant further breached the Territory Agreements with MBA by submitting the MBA Materials to the Copyright Office.

101.    MBA has suffered, and continues to suffer, damages as a result of Defendant's breach of the Territory Agreements.

102.    Defendant agreed to pay MBA its reasonable costs and attorneys' fees incurred in enforcing the Territory Agreements.

**COUNT V**
**Misappropriation of Trade Secrets**
**Under the Federal Defend Trade Secrets Act of 2016**

103.    MBA hereby incorporates herein by reference the allegations contained in paragraphs 1 through 66.

104.    Defendant has misappropriated MBA's trade secrets.

105.    Defendant has caused irreparable injury to MBA by depositing the MBA Materials, which are trade secrets as they are defined in 18 U.S.C. § 1839(3), with the Copyright Office.

106.    Defendant has caused irreparable injury to MBA by breaching the Confidentiality Agreements and Territory Agreements by depositing the MBA Materials, which are trade secrets as they are defined in 18 U.S.C. § 1839(3) with the Copyright Office.

107.    MBA is the owner of the trade secrets misappropriated by Defendant.

108.    The trade secrets misappropriated by Defendant relate to services used in, or intended for use in, interstate commerce by MBA and the MBA Parties.

109.    Defendant's misappropriation of MBA's trade secrets is willful and malicious.

110.    As a result of Defendant's misappropriation of MBA's trade secrets, MBA has suffered and continues to suffer damages.

**COUNT VI**
**Misappropriation of Trade Secrets**
**Under Florida's Uniform Trade Secrets Act**

111.    MBA hereby incorporates herein by reference the allegations contained in paragraphs 1 through 66.

112.    Defendant has misappropriated MBA's trade secrets.

113.    Defendant has caused irreparable injury to MBA by depositing the MBA Materials, which are trade secrets as they are defined in Section 688.002, Florida Statutes, with the Copyright Office.

114.    Defendant has caused irreparable injury to MBA by breaching the Confidentiality Agreements and Territory Agreements by depositing the MBA Materials, which are trade secrets as they are defined in Section 688.002, Florida Statutes, with the Copyright Office.

115.    MBA is the owner of the trade secrets misappropriated by Defendant.

116.    Defendant's misappropriation of MBA's trade secrets is willful and malicious.

117.    As a result of Defendant's misappropriation of MBA's trade secrets, MBA has suffered and continues to suffer damages.

WHEREFORE, MBA prays that this Court enter a judgment against Defendant as follows:

(a) Declaring Defendant's copyright under registration number TXu 2-156-964 invalid and/or not infringed by MBA and/or unenforceable;

(b) Declaring that Defendant does not and cannot have any copyright or other exclusive rights in or to the MBA Materials or the Deposited Materials.

(c) Declaring that reproducing, distributing, displaying, adapting or making other use of the MBA Materials and Deposited Materials is not infringing any exclusive right of Defendant under the Copyright Act;

(d) Permanently enjoining Defendant from threatening MBA, its employees, officers, directors, principals, distributors, dealers, customers, licensees and any other third parties and from bringing legal action based on the Registration or any other claim of a copyright in the Deposited Materials.

(e) Ordering and directing Defendant or his duly authorized agent to submit the appropriate filings with the United States Copyright Office seeking to cancel the Registration using the procedures promulgated by the United States Copyright Office for doing so, including the procedures described in section 1807.4(E) of the United States Copyright Office's Compendium of U.S. Copyright Office Practices (3rd Ed.) and taking any such further actions and making such additional filings as is necessary to forever cancel the Registration;

(f) Declaring MBA the owner of its confidential information and trade secrets, including those contained within the MBA Materials and the edits and revisions of Defendant to the MBA Materials;

(g) Permanently enjoining Defendant from possessing, accessing, using or otherwise misappropriating MBA's confidential information and trade secrets, including the MBA Materials and any edits or revisions to the MBA Materials made by Defendant;

(h) Ordering and directing Defendant to return to MBA all of MBA's confidential information and trade secrets in Defendant's possession, custody or control, including the MBA Materials and any edits or revisions

to the MBA Materials made by Defendant and to file a certification with the Court that Defendant has fully complied with the foregoing;

(i)    Awarding MBA its compensatory, expectancy, and consequential damages, lost profits, special damages, damages for unjust enrichment, reasonable royalty damages, nominal damages, pre- and post-judgment interest, exemplary damages under Section 688.04, Florida Statutes, exemplary damages under 18 U.S.C. § 1836(b)(3)(C), and ordering Defendant to disgorge his profits;

(j)    Awarding MBA its costs and attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 505, 18 U.S.C. § 1836(b)(3)(D) and Fla. Stat. § 688.005; and

(k)    Awarding such further and additional relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury on all issues so triable.

ORR | COOK

/s/ Kevin B. Cook
**Kevin B. Cook, Trial Counsel**
Florida Bar No.: 507474
**Kathleen H. Crowley**
Florida Bar No.: 93587
**Kim Bouchard-Chaimowiz**
Florida Bar No.: 125360
818 AlA North, Suite 302
Ponte Vedra Beach, Florida 32082
(904) 358-8300 (telephone)
(904) 358-8303 (facsimile)
kcook@orrcook.com
kcrowley@orrcook.com
kbouchard@orrcook.com
mvellenga@orrcook.com
handerson@orrcook.com

and

DRIVER, MCAFEE,
HAWTHORNE
   & DIEBENOW, PLLC

/s/ *Richard S. Vermut*
**Richard S. Vermut**
Fla. Bar No.: 86746
One Independent Drive, Suite 1200
Jacksonville, Florida 32202
Office: (904) 807-8207
Fax: (904) 301-1279
Email: rvermut@drivermcafee.com
dboswell@drivermcafee.com
ipdocket@drivermcafee.com

ATTORNEYS FOR MATTRESS
BY APPOINTMENT LLC